**Judy C. FALCON, Plaintiff-Appellant,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant-Appellee.**

**No. 82–3209**
**Non-Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

May 17, 1984.

As Amended on Granting of Rehearing
July 24, 1984.

828

James F. McKenzie, Pensacola, Fla., for plaintiff-appellant.

Samuel A. Alter, Jr., Asst. U.S. Atty., Pensacola, Fla., for defendant-appellee.

Before GODBOLD, Chief Judge, RO-NEY and TJOFLAT, Circuit Judges.

GODBOLD, Chief Judge:

This case involves the denial of social security disability benefits to a claimant who suffers from low back syndrome and depression. The ALJ determined that Falcon could not perform her past relevant work as a licensed practical nurse (LPN) but concluded that she had a residual functional capacity (RFC) of sedentary work. The ALJ also found that Falcon's mental problem was not sufficiently severe to affect her RFC. Applying the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, (1983) ("the grids"), the ALJ concluded the claimant was not disabled. The district court affirmed, finding substantial evidence to support the ALJ's decision.

Falcon makes four assertions of error: (1) because of her mental problem, the ALJ should not have used the grids in his disability determination; (2) at the very least, the Secretary erred in not finding at least a period of disability lasting from April 9, 1979 to February 1981, ("a closed period of disability"); (3) the Secretary did not give proper weight to the determination of disability by the Florida Division of Worker's Compensation; (4) the Secretary improperly rejected Falcon's testimony about the disabling nature of the pain. Depending on resolution of these four issues, there may also be a problem with application of the grids if the Secretary might have denied benefits because she treated age as a categorical factor rather than making an individualized determination about the claimant's ability to adapt to a new work environment. *Broz v. Schweiker*, 677 F.2d 1351 (11th Cir.1982), *vacated and remanded sub nom. Heckler v. Broz*, —— U.S. ——, 103 S.Ct. 2421, 77 L.Ed.2d 1311, *adhered to*, 711 F.2d 957, *modified*, 721 F.2d 1297 (11th Cir.1983).

■ (1) Dr. Makarowski, Falcon's treating psychologist, testified at his deposition that Falcon could work in a supportive environment in a position that was essentially tailor-made for her. 2 Rec. at 182. Makarowski explained that Falcon did not suffer from any problem, such as schizo-phrenia, that would prevent her from functioning at all. *Id.* at 183. At the same time he stated that she could not work in a competitive environment, such as being a cashier at a K-Mart, although she could be a cashier in a family store operation. *Id.* at 187. Makarowski began seeing Falcon on June 24, 1980, six days before her insured status expired. At his deposition Makarowski postulated that Falcon's psychological problems began shortly after her back injury (April 9, 1979), *id.* at 180, although he was not treating her at that time.

Dr. Makarowski's deposition and letter to claimant's counsel are the only pieces of evidence in the record by a psychologist. However, Dr. Newcomb, an orthopedic surgeon, remarked on October 14, 1980 that Falcon was "a different appearing person than the one that I saw on May 7, 1980." *Id.* at 102. Newcomb concluded that Falcon "had developed a vicious cycle of nervous tension and a stress syndrome producing various pains all over her body." *Id.* Newcomb recommended "a combination of physiotherapy and mental health therapy." *Id.* In Newcomb's report about the May 7 visit, he had mentioned no mental problem. *Id.* at 104–05. No other doctor reports in the record discussed Falcon's psychological problem.

The ALJ found that "[i]n conjunction with the claimant's exertional limitations, the non-exertional impairment is not of such severity as to affect the claimant's residual functional capacity for a wide range of sedentary work, and therefore, considering the capacity within the framework of the above rule, the claimant is 'not disabled.'" *Id.* at 16. The ALJ also stated that

[c]onsideration must be given to whether the evidence shows regression or deterioration of the individual's intellectual, behavioral or emotional reactions, and whether the defects so impair the effectiveness and predictability of the individual's behavior so as to be incompatible with occupational activity. There must be findings of unacceptable social behavior, severe persistent depression, gross

errors in judgment and reasoning, insomnia, inability to concentrate, marked loss of weight, or other severe somatic manifestations and a deep seated, intractable, psychogenetic disorder. The claimant does have a psychiatric impairment, but there is no evidence that this has been of such severity as to interfere with her ability to communicate, comprehend, reason or use her body in functions usual to work situations to which she would be exposed in the course of ordinary work activity. The claimant's own treating psychologist has acknowledged that there are occupations in a low to moderate stress situation that the claimant could perform. In addition, the claimant's treating psychologist acknowledged the claimant has shown improvement in response to treatment.

*Id.* at 14–15. It is difficult to determine from these statements on what basis the ALJ concluded that Falcon's depression did not significantly affect her ability to work. He may have made this conclusion on the basis that her impairment would not remain sufficiently severe for the 12 months required by the regulations. 20 C.F.R. Sec. 404.1505(a), .1522 (1983). Makarowski stated in his deposition, taken February 24, 1981, that Falcon had improved since he first saw her the previous June and that continuing psychotherapy would probably not be helpful to her. *Id.* at 178–79, 180–81. The ALJ may have based his decision on Dr. Newcomb's statement in October 1980 about Falcon's May 1980 condition, concluding that Falcon suffered no severe impairment when her insured status expired on June 30, 1980. Such a basis is more problematic, as Newcomb's statement about Falcon's changed condition may relate to her physical problem and not her psychological problem. Furthermore, Newcomb is not a psychiatrist or psychologist. Because we cannot discern the basis for the ALJ's decision, a remand is appropriate for the Secretary to explain the basis for this decision, since the ALJ should not have applied the grids if Falcon's depression would significantly limit her ability to perform basic work activities, such as "[r]esponding appropriately to supervision, co-workers and usual work situations." 20 C.F.R. Sec. 404.1521(b)(5) (1983); *see Broz I,* 677 F.2d at 1356 (finding grids inapplicable "[i]f a claimant has nonexertional impairments that significantly limit the ability to do basic work activities").

■ (2) Social security law requires a continuous period of disability of 12 months for a claimant to be found disabled. 20 C.F.R. Sec. 404.1505(a) (1983). The record indicates that the claimant complained of back pain consistently in the year or so following her injury. She first saw Dr. Maddux on April 11, 1979, two days after her injury. 2 Rec. at 79. At this time the doctor found no neurological deficit. *Id.* at 80. On April 23 Dr. Maddux stated that she could return to work and also go on a trip. *Id.* However, in May 1980, she returned to the doctor with further complaints of back pain. *Id.* at 80–81. She was hospitalized. After her hospitalization Falcon had five nerve blocks done; these did not help the pain. *Id.* at 32, 99. In August 1979, after the last nerve block, she returned to Dr. Maddux. Falcon was again hospitalized. Upon discharge from the hospital, Dr. Kimbell, a consultant, diagnosed "lumbar sprain with possiblelumbar [sic] disk disease, treated and improved." *Id.* at 85. Dr. Kimbell stated in his report that "at the time of discharge ... she was ambulatory with no leg pain or discomfort whatsoever." *Id.*

Falcon did not see another doctor until December 1979 when she consulted Dr. Eyster. The doctor noted that "[s]ince [August] ... the condition has been static with no improvement. Pain, etc., is increased with activity." *Id.* at 99. The following month Dr. Eyster reported "[t]he patient's symptoms are unchanged from December 17, 1979." *Id.* at 100. In February Falcon still complained of pain. *Id.* In April Dr. Eyster stated that Falcon said "her condition is essentially unchanged over the past two months." *Id.* In this report Dr. Eyster concluded that Falcon could now return to work, although she had a ten percent permanent impairment rating. He

further determined that her date of maximum medical improvement (MMI) would be April 20, 1980. *Id.* Falcon complained of pain in her back to Dr. Newcomb in May. *Id.* at 104. At this time Newcomb thought she could return to work in a position less strenuous than LPN. *Id.* at 105. In September 1980 Falcon suffered pain in her chest and left arm that required hospitalization. *Id.* at 108. The doctors determined that this pain probably was not of cardiac origin. *Id.* at 133.

Review of this record indicates that Falcon has consistently claimed to be in pain from April 1979 to at least October 1980. However, pain is not necessarily disabling (as will be discussed *infra*), and there is no allegation that claimant has an impairment meeting or equaling the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1 (1983) (listing impairments sufficiently severe to prevent an individual from engaging in any substantial gainful activity). During these 18 months, Falcon was diagnosed as having lumbar sprain with possible lumbar disk disease (treated and improved) (August 1979) (2 Rec. at 85), chronic lumbar strain (December 1979) (*id.* at 99), nervous tension and stress syndrome (October 1980) (*id.* at 102), and depression (October 1980) (*id.* at 135). Contrary to claimant's brief, there is no statement by Dr. Eyster that Falcon would be disabled until April 20, 1980. Rather, he stated in January 1980 that he believed the patient had been overtreated but recommended some restriction of activity. *Id.* at 100. In a subsequent letter, dated April 15, 1980, Dr. Eyster reported that Falcon "is capable now of returning to work." *Id.* However, the statement is ambiguous. We do not know whether the doctor meant her former work as a nurse or any work at all. The second meaning of the doctor's statement seems contrary to his earlier recommendation that "the patient ... be as active as possible." *Id.* at 99. Furthermore, in May 1980 Dr. Newcomb suggested that Falcon could return to work in a position less demanding than being a nurse. *Id.* at 105. Dr. Maddux had stated in April 1979 that

Falcon could return to work. *Id.* at 80. There is thus substantial support for the ALJ's finding of no closed period of disability.

■ The Deputy Commissioner of the Division of Worker's Compensation for the State of Florida found Falcon temporarily totally disabled from April 1979 up to at least November 1980. Generally, "[t]he findings of disability by another agency, although not binding on the Secretary, are entitled to great weight." *Bloodsworth v. Heckler,* 703 F.2d 1233, 1241 (11th Cir.1983).

The definitions of disability under Florida's worker's compensation law and federal social security law differ. *Compare* Fla. Stat.Ann. Sec. 440.02(9) (West Supp.1984) *with* 20 C.F.R. 404.1505(a)(1983). However, the Florida Supreme Court has interpreted the Florida statute in such a way that the Florida statute operates similarly to the definition under the federal regulations. *See Port Everglades Terminal Co. v. Canty,* 120 So.2d 596 (Fla.1960) (establishing variety of factors to consider in making disability determinations and shifting burden to employer only after employee has shown he can do only specially created job); *Southern Bell Telephone & Telegraph v. Bell,* 116 So.2d 617 (Fla.1959) (providing that ability to compete in job market measured by ability to work in any job with no mention of wage comparison). Because the two disability definitions actually are construed in a like manner, the ALJ erred in not giving great weight to the Florida agency's finding of temporary total disability and on remand must accord the finding its proper weight.

(4) As to the point that the ALJ improperly rejected Falcon's testimony (and that of a friend) about her pain, the ALJ made no express finding of lack of credibility of claimant. However, he did find that

evidence of record reveals the claimant does not suffer such significant loss of function or severe disabling pain as the

result of her back injury as to be precluded from performing all forms of substantial gainful activity.

2 Rec. at 13. The ALJ appears to have based this decision on the lack of evidence of any significant motor, reflex, or sensory abnormalities in the lower back; the use of only conservative treatments (i.e., no surgery); and the lack of use of any pain medication that would interfere with one's ability to think clearly. *Id.*

 The ALJ determines the disabling nature of pain, *Gaultney v. Weinberger*, 505 F.2d 943, 945–46 (5th Cir.1974), and this court will uphold the determination if substantial evidence supports it. *Fortenberry v. Harris*, 612 F.2d 947, 950 (5th Cir.1980). In making such a determination the ALJ must recognize that pain alone can be disabling even without objective medical evidence to support the claimant's testimony about pain. *See Gaultney*, 505 F.2d at 945.

The ALJ here does not seem to have required objective medical evidence. Rather, he appears to have concluded that pain was not disabling based on a combination of no diagnosis of abnormalities in the lower back, use of conservative treatments only, and lack of sufficiently strong pain medication to interfere with Falcon's ability to think. While the issue is close, we hold there is substantial evidence to support the ALJ's finding.

Finally, there is potentially a problem with application of the grids. Falcon was found not disabled under 20 C.F.R. Part 404, Subpart P, Appendix 2, Table 1, Rule 201.28, indicating that her RFC is sedentary and her vocational factors are younger individual, high school graduation or more, and skilled or semi-skilled, with skills not transferable. If Falcon had been either of advanced age or closely approaching advanced age, she would be disabled under the grids. Rules 201.06 and 201.14

(assuming her high school graduation or more does provide direct entry into skilled work and her skills are not transferable). On remand, if the Secretary uses the grids, she must consider on an individualized basis Falcon's ability to adapt to a new work environment. *Broz v. Heckler*, 711 F.2d 957 (11th Cir.1983), *modified, Broz v. Heckler*, 721 F.2d 1297 (11th Cir.1983).

AFFIRMED in part, VACATED in part, and REMANDED.