[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-16021
Non-Argument Calendar
_____

D.C. Docket No. 1:10-cv-00154-MP-GRJ


TERESA D. HUGHES,

                                          Plaintiff-Appellant,

versus

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

                                          Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(August 2, 2012)


Before MARCUS, FAY, and EDMONDSON, Circuit Judges.

PER CURIAM:

Teresa D. Hughes appeals from the district court's order affirming the Administrative Law Judge's ("ALJ") denial of disability insurance benefits ("DIB"), pursuant to 42 U.S.C. § 405(g).  On appeal, Hughes argues that: (1) after the second remand by the district court, the ALJ erred in discounting Hughes's treating physicians' opinions that she is incapable of full-time work; (2) the ALJ violated the credibility pain standard established by this Court when the ALJ disregarded Hughes's testimony regarding pain to the extent that her testimony was inconsistent with the ALJ's determination of Hughes's residual functional capacity; and (3) the ALJ erred by not properly considering Hughes's receipt of Florida State Disability Retirement benefits.  After thorough review, we affirm.

We review a Social Security decision to determine if it is supported by substantial evidence and based on proper legal standards.  Crawford v. Comm'r, 363 F.3d 1155, 1158 (11th Cir. 2004).  Substantial evidence consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Id. (quotation omitted).  The burden rests with the claimant to prove that she is disabled and entitled to Social Security benefits.  See 20 C.F.R. § 404.1512(a).

An individual claiming Social Security disability benefits must prove that she is disabled, see Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999), and for DIB , must demonstrate she was disabled on or before her date last insured, see Moore v.

2

Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). "The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven that she is disabled." Jones, 190 F.3d at 1228. A claimant must show that:

(1)    she is not performing substantial gainful activity;

(2)    she has a severe impairment;

(3)    the impairment or combination of impairments meets or equals an impairment listed in the regulations;

(4)    she cannot return to past work;

(5)    she cannot perform other work based on her age, education, and experience.

Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004); 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. Specifically, at Step Five, a claimant must show that she does not retain the residual functional capacity ("RFC") to perform other work based on her age, education, and experience. 20 C.F.R. § 404.1520(a)(4)(v).

In order to qualify for DIB, an individual must prove that her disability existed prior to the end of her insured status period, and, after insured status is lost, a claim will be denied despite her disability. See Demandre v. Califano, 591 F.2d 1088, 1090-91 (5th Cir. 1979);[1] 42 U.S.C. §§ 416(i), 423(c)(1); 20 C.F.R. § 404.130.

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

"[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is 'not enough to enable [us] to conclude that [the ALJ] considered her medical condition as a whole.'" Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (quoting Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995)).

"[T]he opinion of a treating physician is entitled to substantial weight unless good cause exists for not heeding the treating physician's diagnosis." Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991); see 20 C.F.R. § 404.1527(c) (stating that, generally, more weight is given to opinions from treating sources). However, we have found "good cause" to afford less weight to a treating physician's opinion where the opinion was conclusory or inconsistent with the physician's own medical records or where the evidence supported a contrary finding. See Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Furthermore, the ALJ "is free to reject the opinion of any physician when the evidence supports a contrary conclusion." Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (quotation omitted).

First, we find no merit to Hughes's claim that the ALJ erred in discounting the opinions of Hughes's treating family physician, Dr. May Montrichard, concerning

4

Hughes's ability to work.[2]  Although on at least seven occasions between 2002 and 2009 Dr. Montrichard expressed the opinion that Hughes was completely disabled and incapable of employment, none of these opinions cited to specific objective medical evidence or test results or referenced any specific information regarding the results of physical or mental evaluations in support of those opinions.  Thus, the basis for Dr. Montrichard's opinions remains unclear.  Further, three of Dr. Montrichard's opinions -- the January 27, 2005 letter to the Florida Retirement System, the June 7, 2005 residual functional capacity assessment, and the February 9, 2009 assessment for the Florida Retirement System -- do not appear to be based upon Hughes's mental and physical conditions within the time period at issue in the instant case, July 20, 1999, to December 31, 2004, the date that Hughes was last insured.  Thus, these opinions were not particularly relevant to whether Hughes was disabled for purposes of DIB.  See Demandre, 591 F.2d at 1090-91.

Moreover, substantial evidence supports the ALJ's determination that Dr. Montrichard's opinions regarding Hughes's ability to work were contradicted by

---

[2] As an initial matter, although Hughes mentions that the ALJ erred by rejecting her treating physicians' medical opinions that she was not capable of full-time work, Hughes only presents argument regarding the medical opinions of Dr. Montrichard.  Thus, Hughes has abandoned any challenge to the ALJ's decision to give less weight to opinions of Hughes's other treating physicians.  See Greenbriar, Ltd. v. City of Alabaster, 881 F.2d 1570, 1573 n.6 (11th Cir.1989) (stating that passing references are insufficient to raise issues for appeal and such issues are deemed abandoned).

other medical evidence, including Dr. Montrichard's own statements and those of other treating physicians. For example, in the October 28, 2004 form, Dr. Montrichard opined that Hughes could lift no more than 20 pounds, but in the December 14, 2009 residual functional capacity assessment provided to counsel for the time period of November 11, 1999, to December 31, 2004, Dr. Montrichard opined that Hughes was unable to lift more than 2 pounds. On numerous occasions, Dr. Phillip K. Springer, Hughes's treating psychiatrist and pain management specialist, opined that Hughes's overall mental health showed improvement, often significant, from previous sessions. Other treating physicians, Dr. James Atchison and Dr. Andrew Cordista, noted after September 2001 physical examinations that Hughes had a normal gait, negative straight leg raise on both sides, and no deformity, laxity, or weakness in her cervical or lumbar spine or extremities.

Dr. Montrichard further opined that Hughes's pain was so incapacitating that Hughes was unable to perform most activities of daily living and could not work a normal eight-hour workday, she had extreme limitations in her ability to maintain attention and concentration for extended periods of time, and had marked restrictions in her ability to interact appropriately with the general public, but these opinions were also contradicted by substantial evidence, including by Hughes herself. Hughes consistently reported to doctors and testified at hearings that she was able to take care

6

of her personal needs, cook simple meals, do laundry, wash dishes, go shopping when necessary, handle her own finances, and drive herself to go shopping or to doctor's appointments.

Assessments by consulting physicians, psychiatrists, and psychologists also contradicted Dr. Montrichard's opinions regarding Hughes's capabilities to work full-time. For example, on March 27, 2003, Dr. Lance Chodosh determined that, although Hughes's neck had moderate decrease in range of motion, all joints in extremities had full range of motion; her range of motion for her cervical and lumbar spine were within the normal range; there was no deformity, tenderness, or paraspinal muscular spasm of her back; straight leg raises were negative bilaterally; she had normal gross motor function in all extremities, normal manual dexterity, and good coordination; she had a normal gain, with heel to toe walk; and she was able to squat and rise.

In addition, results of medical tests provided substantial evidence to support the ALJ's determination to give less weight to Dr. Montrichard's opinions. The results of x-rays taken of Hughes's cervical spine on July 12, 2001, showed that her cervical spine was normal, with a mild decrease in disc space at the L4-5 level and narrowing at the L5-S1 which was unchanged from July 27, 1999 MRI results. X-rays taken of Hughes's cervical spine during a June 3, 2001 emergency room visit

7

also revealed no acute abnormalities.  June 2, 2004 MRIs of Hughes's lumbar and cervical spine showed mild narrowing at the L4-5 and L5-S1 levels, but remaining osseous structures appeared unremarkable and, although the radiologist noted some mild degenerative changes, there was no evidence of acute body abnormality.  For all of these reasons, the ALJ did not err by discounting Dr. Montrichard's opinions.

Next, we are unpersuaded by Hughes's argument that the ALJ violated our Court's credibility pain standard.  Pursuant to 42 U.S.C. § 423,

> An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability.  Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether the individual is under a disability.

42 U.S.C. § 423(d)(5)(A).  See also 20 C.F.R. § 404.1528(a) (stating that a claimant's "statements alone are not enough to establish that there is a physical or mental impairment").

In a case where a claimant attempts to establish disability through her own testimony concerning pain or other subjective systems, we apply a three-part "pain standard."  Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).  "The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain."  Id.  If the ALJ decides not to credit a claimant's subjective testimony concerning pain, she "must articulate explicit and adequate reasons for doing so."  Id.

Here, substantial evidence supports the ALJ's determination that Hughes's medically determinable impairments could reasonably be expected to cause her alleged symptoms.  However, substantial evidence also supports the ALJ's determination that Hughes's statements concerning the intensity, persistence, and limiting effects of those symptoms were not credible to the extent that they were inconsistent with the ALJ's functional capacity assessment and the objective evidence in the record.  As we've discussed above, the objective medical evidence showed only

9

minor degenerative changes and no acute abnormalities, and physical examinations demonstrated mostly normal results in terms of range of motion, gait, heel and toe walk, and ability to squat and raise.  And, as we've also already detailed, Hughes's own statements regarding her activities of daily living at least partially contradicted her claims regarding the limiting effects of her symptoms.  What's more, the ALJ's articulated reasons for only partially crediting Hughes's subjective statements regarding her symptoms were adequate, as the ALJ articulated specific medical test results that were not compatible with Hughes's statements, cited to physical examinations by Dr. Montrichard and Dr. Chodosh that were relatively normal, and contrasted Hughes's statements about her symptoms with her reported activities of daily living.

Finally, we reject Hughes's claim that the ALJ erred by not properly considering Hughes's receipt of Florida State Disability Retirement benefits.  Generally, "[t]he findings of disability by another agency, although not binding on the [Commissioner,] are entitled to great weight." Bloodsworth v. Heckler, 703 F.2d 1233, 1241 (11th Cir. 1983).  Even when an agency's definition of disability differs from that of social security law, if the agency's disability definition is construed in a similar manner as the definition of disability under social security law, it is error for

10

the ALJ to not give that agency's finding of disability great weight. <u>Falcon v. Heckler</u>, 732 F.2d 827, 831 (11th Cir. 1984).

In this case, substantial evidence supports the ALJ's decision to give little weight to the State of Florida's disability determination. Although Hughes's submitted the State of Florida's March 7, 2005 disability determination, that document consisted of a single page that stated that Hughes had been approved for "Regular Disability Retirement" but provided no explanation for the basis of that determination. As the ALJ noted, Hughes offered no specific or additional evidence in conjunction with the State's determination that would lead to a different conclusion than that reached in the ALJ's decision.

**AFFIRMED.**