[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-12472
Non-Argument Calendar
_____

D.C. Docket No. 8:11-cv-02505-MSS-AEP


SUSAN DAVIS-GRIMPLIN,

                                                            Plaintiff-Appellant,

versus

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

                                                            Defendant-Appellee.


_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(February 25, 2014)

Before TJOFLAT, MARTIN and PRYOR, Circuit Judges.

PER CURIAM:

Susan Davis-Grimplin ("Davis") appeals the District Court's judgment affirming the Social Security Administration's ("SSA") denial of her applications for disability insurance benefits ("DIB"), 42 U.S.C. § 405(g), and supplemental security income ("SSI"), 42 U.S.C. § 1383(c)(3).

Davis, now at age sixty, seeks DIB and SSI for the period of November 30, 1994, to March 19, 2003. She has at least a high school education and engaged in the following past relevant work: cashier, sales clerk, receiving clerk, hostess, waitress, and prep cook. The ALJ found that Davis had several severe impairments— among them a bilateral carpal tunnel syndrome[1]—during that November 30, 1994, to March 19, 2003, period, but nevertheless denied relief. The Appeals Council denied review, and Davis brought this action in the District Court.[2]

---

[1] The other impairments the ALJ found were: "degenerative disc disease of the lumbar spine, status-post fusion (1993) and hardware removal (1998), history of shoulder bursitis, . . . probable degenerative joint disease of the left knee, fibromyalgia, type II diabetes mellitus, sensory neuropathy, asthma, hiatal hernia, gastroesophageal reflus (GERD), history of peptic ulcer disease, headaches, obesity, and depression." Magistrate Judge's Report and Recommendation dated February 22, 2013 (R & R), at 4.

[2] This case has a lengthy and complex procedural history that includes three applications, five administrative hearings, and three cases in the District Court. Davis first filed her application for a period of disability and DIB in March 1995, alleging a disability that began on November 30, 1994. An ALJ issued a partially favorable decision, finding that Davis was disabled as of her fiftieth birthday, March 20, 2003, but that she was not disabled prior to that date, and that she needed to demonstrate that she was under a disability on or before December 31, 1998, to satisfy the Social Security Act's insured-status requirements.

After an appeal and an administrative remand, a second ALJ found that Davis was not disabled for the period from November 30, 1994, to March 19, 2003. An appeal to the District Court resulted in the reversal of that finding and a remand for further consideration because: (1) the ALJ's decision did not mention or evaluate Davis's award of state worker's compensation

In the District Court, Davis argued that the ALJ erred in a number of ways, by:

> (1) failing to follow the Court's Remand Order[3]; (2) posing an improper hypothetical [to the Vocational Expert (VE)], especially when the proper hypothetical posed, a finding of disability is mandated; (3) failing to find Plaintiff disabled under Social Security Ruling (SSR) 83-14; (4) improperly analyzing Plaintiff's obesity; (5) failing to recognize all of Plaintiff's impairments; (6) failing to afford proper weight to Plaintiff's treating physicians; (7) failing to properly consider Plaintiff's fibromyalgia; and (8) failing to properly apply Eleventh Circuit's pain standard.

Magistrate Judge's Report and Recommendation (R & R) at 7-8 (footnotes omitted).

The Magistrate Judge considered these points and, in his R & R to the District Court, concluded that the ALJ had applied the correct legal standards and

---

benefits for a permanent and total disability; and (2) the ALJ had not found any residual functional capacity limitation arising from Davis's hand problem despite finding that Davis had a severe impairment of bilateral carpal tunnel syndrome.

On remand, a third ALJ found as follows: (1) the limited evidence regarding the state's worker's compensation award was conclusory, did not explain the reasons for the award, and, if adequate, was inconsistent with the evidence in the record; (2) among other things, Davis had a severe impairment of bilateral carpal tunnel syndrome, and that the combination of Davis's issues with her upper and lower extremities and that syndrome suggested that all were severe and had a combined effect of limiting her ability to less than a reduced range of sedentary work, with lifting up to 10 pounds, no repetitive overhead reaching, and standing or walking only two hours in an eight-hour day. The ALJ also found that the evidence did not support any additional functional limitations based on Davis's bilateral carpal tunnel syndrome. Then, based on the VE's testimony, the ALJ found that there were jobs in significant numbers in the national economy that Davis could have performed during the period in question, even with her residual functional capacity, and accordingly denied her applications.

[3] The District Court remanded the case so the ALJ could (1) identify the functional limitations caused by Davis's bilateral carpal tunnel syndrome and (2) consider Davis's worker's compensation as probative evidence of disability or provide an adequate explanation for disregarding it as such.

3

that the ALJ's decision denying Davis's applications was supported by substantial

evidence. *Id.*

> Davis objected to the Magistrate's Judge's R & R on three grounds:
>
> (1) [T]he ALJ failed to identify the functional limitations resulting from Plaintiff's bilateral carpal tunnel syndrome, and consequently the ALJ failed to incorporate any findings as to Plaintiff's bilateral carpal tunnel syndrome into a hypothetical posed to the vocational expert ("VE"). [Referring to the Remand Order,[4]] Plaintiff argues that the ALJ failed to explain why he did not afford the worker's compensation disability determination great weight. (2) [T]here should be an immediate finding that Plaintiff lacked bilateral manual dexterity, and such a finding in combination with Plaintiff's other impairments would warrant the conclusion that Plaintiff is disabled as a matter of law." (3) [T]he Magistrate Judge did not properly address the ALJ"s failure to properly apply the Eleventh Circuit's pain standard. . . . [T]he Magistrate Judge improperly reasoned that there must be an objective basis for headaches, . . . that headaches are a non-exertional impairment and objective evidence is not required to establish them as a basis for disabling pain. In addition, . . . the Magistrate Judge erred by using daily activities as a method of refuting Plaintiff's pain testimony. Her testimony regarding her pain has not been properly refuted and, as such, must be accepted as true. Thus, . . . she has satisfied the Eleventh Circuit's pain standard such that her level of pain in combination with all impairments proven and not refuted should result in a finding that she is disabled.

District Court Order at 4. The District Court rejected Davis's first ground,

concluding that the Magistrate Judge did not err in concluding that the ALJ

complied with the Remand Order; the ALJ did as ordered and identified the

functional limitations resulting from Davis's bilateral carpal tunnel syndrome. He

---

[4] *See Susan J. Davis-Grimplin v. Comm'r of Soc. Sec.*, 8:08-cv-23-T-24TGW, Dkt. Nos. 17, 18 (M.D. Fla.)

found that the syndrome "significantly limited [Davis's] ability to perform basic work activities such as lifting, pushing, reaching, carrying, or handling." *Id.* at 5. The ALJ limited Davis to a reduced range of sedentary work, with lifting up to ten pounds only and no repetitive overhead reaching." *Id.* at 5-6. Addressing the worker's compensation issue, the Magistrate Judge properly found satisfactory the ALJ's explanation for affording the worker's compensation determination practically no weight. The evidence of the worker's compensation determination consisted of a "single page conclusory document that was void of any substantive analysis or explanation of the basis for that determination." *Id.* at 7. As for the hypothetical posed to the VE, the District Court concluded that the Magistrate Judge had not erred in determining that Davis "did not demonstrate functional limitations related to her bilateral carpal tunnel syndrome beyond those identified in the residual functional capacity ("RFC"); and thus, the ALJ did not need to include any further limitations with respect to manipulation or handling in his hypothetical to the VE." *Id.* at 6.

The District Court rejected Davis's second ground, concluding that the Magistrate Judge did not err in finding the ALJ's treatment of the issue well-founded. The record supported the ALJ's declination to find that Davis "lacked the good use of both her hands." *Id.* Her "medical history indicated that [she]

5

consistently demonstrated good range of motion and good grip strength of her wrists and normal fine and gross manipulation." *Id.*

As for Davis's third ground, the District Court found no error in the Magistrate Judge's conclusion that the ALJ properly applied this circuit's pain standard in considering Davis's subjective pain testimony regarding her headaches and her other impairments.  "[S]ubstantial evidence supported the ALJ's finding that [Davis's] impairments did not correlate with [her] subjective complaints." *Id.* at 8.

In prosecuting this appeal, Davis argues that "the hypothetical [question] used as a basis for [the ALJ's] decision was incomplete since no limitation from an impairment which was deemed to be severe, that of bilateral carpal tunnel syndrome, was given in [the] hypothetical [question] to the VE."  Appellant's Br. at 8.  According to Davis, the ALJ should have included a functional limitation of her hands in the hypothetical question—because he had already been determined that the syndrome was a severe impairment—and that had he done so, he would have granted her DIB and SSA applications.  Davis also says that the ALJ would have granted the applications had she supported her argument that the hypothetical question was incomplete with a statement that the ALJ should have given "great weight" to the state worker's compensation determination.

6

We review the Commissioner's legal conclusions *de novo* and determine whether his final decision is supported by substantial evidence. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). Substantial evidence is defined as "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* We do not reweigh the evidence, make credibility determinations, or substitute our judgment for that of the Commissioner. *See id.* at 1211, 1213.

Eligibility for disability insurance benefits requires that the claimant is under a disability. 42 U.S.C. § 423(a)(1)(E). In order to determine whether a claimant is disabled, the Social Security Administration applies a five-step sequential evaluation. 20 C.F.R. § 404.1520(a). This process includes an analysis of whether the claimant: (1) is unable to engage in substantial gainful activity; (2) has a severe medically determinable physical or mental impairment; (3) has such an impairment that meets or equals a listed impairment and meets the duration requirements; (4) is unable to perform her past relevant work, in light of her residual functional capacity; and (5) cannot make an adjustment to other work, in light of her residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4). A "severe" impairment does not necessarily indicate that a person has a disability qualifying her for benefits because it is possible that, even with the severe impairment, that person could still perform the work pertaining to

7

her job after taking into consideration other vocational factors. *See McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) (finding that "the 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality").

Generally, "[t]he findings of disability by another agency, although not binding on the [Commissioner], are entitled to great weight." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1241 (11th Cir. 1983). Even when an agency's definition of disability differs from that of social security law, if the agency's disability definition is construed in a similar manner as the definition of disability under social security law, it is error for the ALJ to not give that agency's finding of disability great weight. *Falcon v. Heckler*, 732 F.2d 827, 831 (11th Cir. 1984).

When a claimant attempts to establish disability through her own testimony concerning pain or other subjective symptoms, she must show evidence of an underlying medical condition, and either (1) "objective medical evidence that confirms the severity of the alleged pain" stemming from that condition, or (2) "that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002). The ALJ must articulate explicit and adequate reasons for choosing to discredit subjective testimony. *Id.* If the ALJ fails to articulate the reasons for

8

discrediting subjective testimony, then, as a matter of law, the testimony must be accepted as true. *Id.*

The ALJ may consider the claimant's daily activities when evaluating her subjective symptoms, but a claimant's admission that she participates in daily activities for short durations does not necessarily disqualify her from a disability. 20 C.F.R. § 404.1529(c)(3)(i); *see Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997) (noting that the claimant's successful completion of a six-minute treadmill exercise was not necessarily indicative of his ability to work, and that the fact that he did housework and went fishing was not inconsistent with the limitations recommended by his treating physicians).

Under step five of the sequential evaluation process, the ALJ must determine whether the claimant is able to perform other work that exists in the national economy. *See Wilson*, 284 F.3d at 1227.  If the ALJ finds that the claimant is able to perform other work, he "must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture." *Id.*  One way in which the ALJ may determine that the claimant is able to perform other jobs is by posing a hypothetical question to a VE that comprises all of the claimant's impairments. *Id.*  The hypothetical does not need to include any symptom alleged by the claimant that is not supported by medical evidence. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1270 (11th Cir.

2007) ("The hypothetical need only include 'the claimant's impairments,' not each and every symptom of the claimant." (citation omitted)).

After considering the parties' briefs and the record before the ALJ, we conclude that substantial evidence supports the ALJ' denial of Davis's DIB and SSA applications. First, the ALJ complied with the Remand Order. The ALJ had ample evidence on which to conclude that Davis did not have functional limitations of her hands notwithstanding that her bilateral carpal tunnel syndrome is a severe impairment. He therefore was not required to include a hand limitation in the hypothetical posed to the VE. Moreover, as the Remand Order required, he thoroughly explained his reasons for not including a functional limitation of the hands in his question to the VE.

Second, the ALJ was plainly justified in giving little weight to the State of Florida's disability determination because all that Davis introduced was a one-page, conclusory document acknowledging that she was receiving worker's compensation benefits.

In sum, the ALJ did not err in relying on the VE's answer regarding the existence of jobs in the economy that Davis could perform in reaching his decision to deny Davis's applications.

AFFIRMED.

10