[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-15015
Non-Argument Calendar
_____

D.C. Docket No. 1:11-cv-00097-MP-CAS


MICHAEL C. CARTER,

Plaintiff-Appellant,

versus

CAROLYN W. COLVIN,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Northern District of Florida
_____

(June 16, 2014)

Before HULL, MARCUS and KRAVITCH, Circuit Judges.

PER CURIAM:

Michael Carter appeals the district court's order affirming the Social

Security Administration's (SSA) partially favorable disability determination.  After

a thorough review, we affirm.

I.

The procedural history of this case is long and complicated, spanning more than seventeen years, three Administrative Law Judges (ALJs), and numerous remands. We recount it only briefly to place the current issues in context. Carter first filed for disability benefits in 1996, alleging a disability onset date of December 31, 1994 due to a back injury and several unsuccessful surgeries. After an unfavorable determination, he appealed. The case was eventually remanded to the ALJ with instructions to address what weight the ALJ had given to a state Workers' Compensation determination that Carter was totally and permanently disabled as of February 27, 1996.[1] On remand, in a March 2004 order, the ALJ addressed at length the weight to be given to a state Workers' Compensation determination under this Circuit's case law and the social security regulations. The ALJ then explained his reasons for giving it little weight in Carter's case, specifically that the record lacked any evidence to show the basis for the disability determination, as the only evidence submitted from Workers' Compensation were a stipulation agreement and settlement order in which the parties agreed that Carter was totally disabled.

During the pendency of the 1996 application, Carter filed another

---

[1] The Workers' Compensation stipulation in the record indicates that the state agency found Carter temporarily disabled from March 5, 1992, through February 29, 1996. The agency found Carter totally and permanently disabled as of February 27, 1996.

2

application for benefits in 2000. He was awarded benefits from July 28, 2000. In an order dated September 2004, the ALJ stated that he was adopting the ALJ's findings from the March 2004 order with respect to the weight given to the Workers' Compensation determination.

Carter appealed the March and September 2004 ALJ decisions. The government moved for remand of the September 2004 order to address the weight given to the Workers' Compensation determination. The district court remanded both 2004 decisions, after which the Appeals Council consolidated the cases, reassigned the case, and instructed the new ALJ to rule on all issues for the entire relevant period beginning December 31, 1994. The Appeals Council also instructed the ALJ to "rearticulate" the weight given to the Workers' Compensation determination that Carter was disabled, consistent with this Circuit's case law and the social security regulations.

In 2008, after a hearing, the ALJ determined that Carter was not disabled at any time during the relevant period. The ALJ adopted the previous findings regarding the Workers' Compensation determination and declined to give it weight because there was no indication of the facts or standards used in issuing the determination. The ALJ noted that there was no new evidence about the Workers' Compensation benefits in the record.

Carter appealed the 2008 unfavorable decision. On judicial review, the

3

district court ordered a remand for additional vocational expert (VE) testimony. In 2011, the same ALJ concluded that Carter was disabled as of October 26, 1996, but not before. Carter again appealed, and the district court affirmed the Commissioner's decision, leading to the present appeal.

II.

We review the Commissioner's decision in order to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Substantial evidence is "more than a scintilla" and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Id.* We will not reweigh the evidence and decide facts anew, and must defer to the ALJ's decision if it is supported by substantial evidence even if the evidence in the record may preponderate against the ALJ's decision. *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

The Commissioner uses a five-step, sequential evaluation process to determine whether a claimant is disabled. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). This process includes an analysis of whether the claimant: (1) is currently engaged in substantial gainful activity; (2) has a severe and medically determinable impairment; (3) has an impairment, or combination thereof, that meets or equals a Listing in the SSA regulations, and meets the duration requirement; (4) can perform his past relevant work, in light of his

residual functional capacity (RFC); and (5) can make an adjustment to other work, in light of his RFC, age, education, and work experience. *Id.*; 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The ALJ has a duty to make clear the weight accorded to each item of evidence and the reasons for those decisions, so as to enable a reviewing court to determine whether the ultimate decision is based on substantial evidence. *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). Although the ALJ's explanation of the decision need not account for every piece of evidence, *Dyer*, 395 F.3d at 1211, it must sufficiently explain the weight given to "obviously probative" evidence, *Cowart*, 662 F.2d at 735 (quotation omitted).

Pursuant to SSA regulations, a decision by any nongovernmental agency or any other governmental agency about whether a claimant is disabled based on its own rules is "not [the SSA's] decision about whether [the claimant is] disabled," as the SSA must makes its determination based on Social Security law. 20 C.F.R. § 404.1504. Thus, "a determination made by another agency that [a claimant is] disabled . . . is not binding on [the SSA]." *Id.* But findings of disability by another agency are still "entitled to great weight." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1241 (11th Cir. 1983); *see also Falcon v. Heckler*, 732 F.2d 827, 831 (11th Cir. 1984). In *Falcon*, we determined that even though the definitions for disability under Florida law and SSA regulations differed, the Florida Supreme Court had

5

interpreted the Florida Workers' Compensation statute so that it "operates similarly" to the SSA's definition and thus, because "the two disability definitions are construed in a like manner," the ALJ erred in not giving great weight to the Florida agency's finding regarding disability. *Falcon*, 732 F.2d at 831.

Here, the ALJ applied the five-step sequential evaluation and determined, at steps one and two, that from December 31, 1994, onward Carter was not engaged in substantial gainful activity and had the following severe impairments: (1) status-post several back surgeries; (2) right hand weakness; (3) a history of depression and alcohol abuse; and, beginning on October 26, 1996, (4) affective mood disorder. But the ALJ concluded that these impairments did not meet or equal a listed impairment, and for the period at issue Carter had the RFC to perform sedentary work with various limitations. The ALJ stated that in making this finding she considered all symptoms and the extent to which those symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence. The ALJ concluded that Carter was not fully credible regarding his symptoms, functional limitations, or inability to work prior to October 26, 1996.

Carter argues that the ALJ's decision is not supported by substantial evidence, as the medical record shows he was disabled as of December 31, 1994, and the ALJ failed to give the proper weight to the state Workers' Compensation

determination.  We disagree on both issues.

First, the previous ALJ decisions in Carter's case offered explanations for their rejection of the Workers' Compensation determination.  Subsequent decisions adopted the original finding, and offered additional explanation for rejecting the state determination.  Specifically, the ALJ in March 2004 engaged in a lengthy discussion of his rejection of the Workers' Compensation determination, noting that the only evidence in the record was a stipulation that Carter was disabled.  There was nothing to establish the factual basis for this determination — the documents did not even identify the injury that rendered Carter disabled — and, as such, the ALJ gave it little weight.  Subsequent ALJs repeated this as the basis for rejecting the determination, and the most recent ALJ opinion also noted that there had been no additional evidence submitted regarding the Workers' Compensation findings.  We cannot conclude that the ALJ failed to give the Workers' Compensation determination proper weight.  *Cf. Falcon*, 732 F.2d at 831.

Moreover, in the most recent remand, the district court instructed the ALJ to take additional testimony from a VE.  But the district court explicitly rejected Carter's argument that the ALJ failed to weigh the Workers' Compensation determination properly.  We see no error in the district court's conclusion, adopted from the magistrate judge's report, that the ALJ sufficiently addressed the Workers' Compensation determination.

Turning to the medical record, we conclude that substantial evidence supports the ALJ's finding that Carter was not disabled between December 31, 1994, and October 25, 1996.

Dr. Parr, an orthopedist, opined, both before and after Carter's fusion procedure in December 1994, that Carter should consider returning to work. Months after the fusion procedure, Dr. Parr observed that x-rays and a CT scan showed a solid fusion at the L4/L5 level, his hardware in good position, solid bone growth on either side of the hardware, and no other back abnormalities. Carter also was treated by Dr. Paige at a pain clinic. Dr. Paige confirmed in November 1995 that Carter had a limited range of motion in his back, but Carter's straight leg raises were negative and Carter could heel/toe walk. In December 1995, Carter described his pain as a six or seven out of ten, but on physical examination there was no evidence of any neuromas, trigger points, or evidence of tenderness along his spine. In March 1996, Dr. Scott noted that Carter exhibited a limited range of motion, but had no tenderness or palpable spasms along his back.

Although Carter complained of pain, he stated that he had some relief with medication and physical therapy, and his pain was under good control. Records also show that Carter reported not taking prescribed medication, unilaterally increasing his usage of other medication, and repeatedly refusing epidural steroid treatments or other invasive procedures. Carter testified that he was able to ride a

8

stationary bike at physical therapy, shop for groceries with assistance, cook for himself, and perform sit-ups. At an August 1996 visit to a pain clinic, Carter stated that he was improving with physical therapy. Additionally, an October 1996 RFC assessment noted that Carter could stand, sit, and walk about 6 hours in an 8-hour work day. This physical evidence supports the ALJ's decision. *See Crawford*, 363 F.3d at 1158; *Dyer*, 395 F.3d at 1210.

Moreover, based on the record evidence, Carter could perform sedentary work with restrictions. *See Dyer*, 395 F.3d at 1210. Dr. Bordini, Carter's treating psychologist, opined in February 1996, that although it was unlikely Carter could return to work requiring significant physical labor, Carter appeared to be a good vocational rehabilitation candidate if his depression and alcohol abuse could be addressed. In April 1996, Carter stated he was interested in pursuing vocational rehabilitation, that he had curtailed his alcohol use, and that he was less bothered by significant depression. Although Bordini noted that Carter had residual difficulty with anxiety and depression, he concluded that the depression tended to fluctuate with pain and stress. In October 1996, Bordini reported that Carter's stress tolerance was limited and Carter had poor persistence due to pain, but his concentration was adequate and he had no problems with memory.

As for Carter's argument that the ALJ's selected onset date of October 26, 1996, was arbitrary, we disagree. *See Crawford*, 363 F.3d at 1158. On October 3,

1996, Dr. Bordini observed that Carter's concentration was adequate and his depression fluctuated. Bordini made the same finding in an October 18, 1996, evaluation, although Bordini also stated that Carter had poor persistence due to pain and was depressed at times, which limited his social interactions. But in her October 26, 1996, mental RFC assessment, state agency psychologist Patricia Boger stated that Carter would often have deficiencies of concentration, persistence, or pace, was moderately limited in interacting appropriately with the general public, and that Carter might have problems with pace and persistence due to chronic pain and intermittent depression. These records document that Carter's symptoms and limitations appeared to worsen in October 1996, and thus the ALJ's use of the date of Dr. Boger's RFC assessment, which first documented that he would often have deficiencies in concentration, persistence, or pace was not arbitrary. *See Crawford*, 363 F.3d at 1158. Accordingly, we conclude that substantial evidence supports the ALJ's determination of Carter's disability onset date.

    **AFFIRMED**.